**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **PROBAX USA, INC. and PROBAX PTY LTD,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Case No.** 1:26-cv-9052 |
| | § | |
| **KEVIN ALLAN,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFFS' ORIGINAL VERIFIED COMPLAINT AND APPLICATION FOR <u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIONS</u>**

COMES NOW Plaintiffs Probax USA, Inc. ("Probax") and Probax PTY LTD ("Probax Australia," and together with Probax, "Plaintiffs"), by and through their attorneys, file this Original Verified Complaint against Defendant Kevin Allan ("Defendant" or "Allan") and Application for Temporary Restraining Order and Preliminary and Permanent Injunctions against Allan and in support thereof respectfully allege and show the Court as follows:

## I. INTRODUCTION

Probax brings this action against its former Chief Technology Officer ("CTO") to stop him from holding the company's source code hostage, misappropriating Probax's confidential and trade secret information, and violating the contractual duties he owes to Probax.

For nearly nine years, Allan served as a trusted officer of Probax. As Chief Technology Officer, Allan led Probax's information systems, managed its IT development, infrastructure, and technical support teams, and held global administrative access to every critical Probax system, including the Bitbucket workspace that houses Probax's source code. Allan had this access for one

purpose: to build and protect Probax's software platform for the sole benefit of Probax. In exchange, Allan promised to hold Probax's Confidential Information in the strictest confidence and agreed that every work, process, invention, and trade secret he created in connection with his employment would belong solely and exclusively to Probax.

Allan has now betrayed that trust. On September 28, 2026, Probax ended Allan's employment for financial reasons. Probax reminded Allan of his continuing confidentiality obligations, instructed him to keep all Probax systems and data wholly intact, and directed him to transfer administrative access to Probax's designee. Allan did the opposite. He has not only removed Probax's code from the Probax Workspace, but has also failed to deliver to Probax the Company-owned code he keeps in his own personal storage, which is equally Probax's property.

After his termination, Allan used his administrative credentials to move Probax's source code repositories out of Probax's Bitbucket workspace and into a personal Bitbucket workspace that Allan alone controls. Additionally, Allan refused to deliver the company-owned code from his personal storage to the company, intact and operational as of September 28, 2026.

Probax's concerns are not hypothetical. Two days after his termination, Allan acknowledged in writing that repositories in the Company Bitbucket workspace belong to Probax. Allan nonetheless claimed that repositories in his "personal" Bitbucket workspace "remain mine," announced that he does "not consent to any copying, reproduction or disclosure" of that code, and demanded that Probax halt any third-party access to its own source code. Days later, Allan moved eight of Probax's repositories, including its core "Scout" code, from Probax's workspace into that "personal" workspace. Probax's access, transfer, and audit logs tie each transfer to Allan. Allan now controls the core asset of the company, and a pending transaction that depends on that platform hangs in the balance.

To prevent the irreparable harm to Probax that would result from Allan's continued conduct, Probax asks this Honorable Court to, among other things, enjoin Allan from accessing, using, disclosing, transferring, altering, or destroying Probax's source code and Confidential Information, and to order Allan to preserve all evidence and restore Probax's repositories to Probax's exclusive control.

## II. PARTIES, JURISDICTION AND VENUE

1. Plaintiff Probax USA, Inc. is a Texas for-profit corporation with its registered office at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

2. Plaintiff Probax PTY LTD is an Australian proprietary limited company with its principal place of business at Level 33, 250 St Georges Terrace, Perth, Western Australia 6000. Probax Australia owns the intellectual property that it exclusively licenses to Probax for use in Probax's business. Probax Australia has never sold, assigned, or otherwise transferred that intellectual property to Probax, and neither Probax nor Probax Australia has ever negotiated, discussed, or entered into any asset purchase agreement providing for such a transfer.

3. Defendant Kevin Allan is a natural person who, upon information and belief, resides at 435 West 31st Street, Apt. 37F, New York, New York 10001.

4. The Court has personal jurisdiction over Allan because Allan is domiciled in New York and intends to remain in New York.

5. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Probax asserts claims arising under federal law, including the Defend Trade Secrets Act, 18 U.S.C. § 1836 and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. The Court has supplemental jurisdiction over Probax's breach of contract claim under 28 U.S.C. § 1367(a) because it forms part of the same case or controversy.

6. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(1) because Defendant Allan resides in this District and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the District.

7. Probax seeks injunctive relief pursuant to Federal Rule 65, Defend Trade Secret Act, 18 U.S.C. § 1836(b)(3)(A), and seeks to protect, by way of injunctive relief, contract rights and property.

8. By reason of the foregoing, the Court has jurisdiction and venue over this action.

## III. FACTUAL BACKGROUND

### A. Probax and Its Proprietary Source Code

9. Probax is a technology company that develops and operates a proprietary cloud-based software platform. Probax's source code, repositories, architecture, credentials, and technical documentation are the core assets of the company.

10. Over the years, Probax has developed, at its own expense, proprietary source code, software repositories, system architecture, infrastructure configurations, credentials, technical documentation, and related business information (collectively, the "Source Code").

11. Probax has expended significant time, effort, and money to develop and to protect the Source Code and its related confidential information.

12. This information is a valuable asset of Probax and derives independent economic value, actual and potential, from not being generally known to and not being readily ascertainable through proper means by other persons who could obtain economic value from its disclosure or use. Knowing this information would give a competitor of Probax a competitive advantage or the opportunity to obtain one.

13. Probax has taken reasonable measures to protect the secrecy of the Source Code, including, but not limited to, requiring employees with access to it to agree to confidentiality obligations, storing the Source Code in a private, access-controlled Bitbucket workspace, restricting administrative access to its systems, maintaining a secure computer network, and limiting access to its network on a password-protected basis.

14. The Source Code and the proprietary and confidential information described above constitute trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1839(3), and New York common law. The Source Code relates to a product and service that Probax uses in, and intends for use in, interstate and foreign commerce, because Probax provides its cloud-based software platform to customers in multiple states.

**B. Allan's Employment and His Contractual Obligations to Probax**

15. In 2017, Allan's role as Founder and CTO of Probax Australia was formalized into an employment agreement with Probax, a wholly owned subsidiary of Probax Australia. On November 24, 2017, Probax offered Allan employment as its Chief Technology Officer, and Allan accepted the offer on December 3, 2017. A copy of the offer letter (the "Agreement") is attached hereto as Exhibit 1.

16. Under the Agreement, Allan served as "the head Information Systems Manager for the Company" and took charge of "hiring and managing the IT development, infrastructure and technical support teams." Ex. 1, § 1. Allan never served as a director of Probax. Allan formerly served as a director of Probax Australia, a position from which he resigned by letter dated October 14, 2025.

17. In Allan's new role at Probax, he maintained access to its most sensitive information so that he could properly do his job. As part of this employment, Probax required Allan, to agree to confidentiality obligations. The Agreement defines "Confidential Information" as follows:

> All trade and business secrets and other information and documents which are not generally known or available or not already known or available to you at the time of disclosure (other than through the Company's disclosure) but which relate to the affairs or business of the Company and its related companies or any person with whom you come into contact as a result of the CTO employment, or which come into your possession in the course and by reason of the employment, whether or not the same were originally supplied by the Company or its related companies, are confidential (hereafter, "Confidential Information").

*Id.* at § 7.

18. In the Agreement, Allan agreed to treat Probax's Confidential Information as secret at all times:

> You and the Company agree that the Confidential Information is at all times to be treated as secret and undertake to maintain and take all steps necessary to maintain the Confidential Information in strictest confidence.

*Id.* at § 7(a).

19. Allan further agreed not to use or disclose Probax's Confidential Information during his employment or at any time afterward:

> You represent and warrant that you will not, either during the employment or at any time afterwards except in the proper course of duties under this Agreement or as required by law or by the Company, use or disclose, to any person, any Confidential Information, and you will use your best endeavours to prevent the unauthorised use or disclosure of Confidential Information by third parties.

*Id.* at § 7(b).

20. Importantly, Allan agreed that every work, process, invention, and trade secret he created in connection with his employment would belong solely and exclusively to Probax:

> You represent and warrant that you will immediately communicate to the Company any and all literary and other works and subject matter including all works, processes, inventions, improvements, innovations, modifications, designs, discoveries, trade marks and trade secrets, however embodied, which

> you may make either alone or in conjunction with others during the course of, in connection with or arising out of the CTO employment . . . (hereafter, "Inventions") . . . and the Inventions will thereafter be the sole and exclusive property of the Company.

*Id.* at § 8.

21. The Agreement is supported by and protects legitimate business interests, including, but not limited to, Probax's ownership of the Source Code and its confidential and trade secret information.

22. After he signed the Agreement, Allan maintained access to Probax's confidential, proprietary, and trade secret information, including the Source Code. In exchange for Allan's promises in the Agreement, Probax also provided Allan with benefits he did not receive from Probax Australia. Probax paid Allan compensation for his services, which was initially calculated at a fixed hourly rate that effectively operated as a salary and, beginning with Allan's 2025 visa extension, was structured as a salary. From the launch of Probax's U.S. operations until 2023, Probax also paid for workspace in New York City, and because that building also offered apartments, Probax's single payment for the workspace also covered an apartment for Allan. Probax paid Allan a correspondingly reduced salary to account for the benefit of that housing; when Probax ended that arrangement in 2023, it placed Allan on full salary. As a result, the Agreement is supported by adequate consideration and is enforceable.

**C. Allan Controlled Probax's Systems as Chief Technology Officer**

23. In fulfilling his duties for Probax, Allan held global administrative access to Probax's electronic systems, including, but not limited to, JIRA and Bitbucket, AWS root, OVH US, Fortiweb, Heimdall, Wasabi, Slack, and NameCheap.

24. Probax stores the Source Code in two Bitbucket workspaces located at bitbucket.org/probax and bitbucket.org/probaxdevteam (collectively, the "Probax Workspace"), for which Probax pays. Probax developed the code in the Probax Workspace at its own expense.

**D. Probax Terminates Allan's Employment and Reminds Him of His Obligations**

25. On September 28, 2026, because of Probax's financial circumstances and lack of sufficient capital to maintain payroll for Allan's position, Probax ended Allan's employment effective that day. A copy of the termination email is attached hereto as Exhibit 2.

26. Probax also instructed Allan that "all Company systems, data, records, and other property must be maintained wholly intact and must not be deleted, altered, transferred, or otherwise impaired." Ex. 2.

27. Probax further directed Allan to transition full administrative access to Probax's designee, Travis Bannach, by designating Mr. Bannach as global administrator and providing all passwords, credentials, and authentication information for each Probax system, including JIRA and Bitbucket. Ex. 2. Probax communicated the termination and these instructions through Allan's then-counsel, Danny Grace PLLC. Later that same day, Allan's counsel responded that "[o]ur representation has concluded" and asked that all communications be directed to Allan himself. That email exchange is also included in Exhibit 2. Since that time, Allan has not been represented by counsel in connection with this matter, and Probax has therefore communicated with Allan directly.

**E. Allan Takes Probax's Source Code**

28. Allan did not comply. Instead, after Probax terminated his employment, Allan used his administrative credentials to move Probax's source code repositories out of the Probax Workspace

and into a personal Bitbucket workspace named "kevinallanpersonal" that is tied to Allan's individual account and that Allan alone controls (the "Allan Workspace").

29. Probax's access, transfer, and audit logs, including timestamps, account identifiers, and metadata, tie each transfer to Allan. On October 6, 2026, between approximately 20:25 and 20:35 UTC, Allan transferred eight repositories to a workspace named "kevinallanpersonal" and removed them from Probax's workspace, each time from IP address 151.205.116.44, an address from which Allan repeatedly administered the workspace's IP allowlist and which appears on that allowlist. A copy of the Bitbucket audit log for the Probax Workspace, captured on October 12, 2026, is attached hereto as Exhibit 3-A; a copy of the corresponding audit log export, which records each event in UTC, is attached hereto as Exhibit 3-B; and a copy of a screenshot of the IP allowlist is attached hereto as Exhibit 3-C. The audit log further shows that, after his termination, Allan uninstalled Jira from the Probax Workspace, accepted an invitation to the Probax Workspace using his personal Gmail account and added that account to the Workspace Admins group, removed his Probax account from that group, renamed the Probax workspace ID, removed Probax's John Eikenberry from the Workspace Admins group, and enabled IP whitelisting restricting access to the workspace. Exs. 3-A, 3-B.

30. The eight transferred repositories are: dropbox, dropboxv2, scout, internal-api, metabase-tools, api, vcspchecker, and vcspchecker-www. Bitbucket generated a separate automated notification of each transfer to Allan's Company email account, which Probax redirected upon his termination. Copies of those notifications are attached hereto as Exhibit 4. Allan created each of the transferred repositories during his employment as Probax's Chief Technology Officer, between December 2017 and February 2023. Although Allan initially created six of those repositories under the namespace of his individual Bitbucket account, he did so in connection with and arising out of

his employment with Probax, invited Probax personnel to access them, and maintained them in the Probax Workspace, on a premium plan for which Probax pays, until he removed them on October 6, 2026. In recent months, Probax-employed developers, not Allan, made most of the changes to the Probax platform. Neither Allan's role as a founder of Probax Australia nor the account under which he first created any repository changes the result: Allan created the repositories while employed by Probax and bound by the Agreement, whose assignment provision turns on whether the work was made in connection with and arising out of his employment, not on whose account name it was saved under or on his tenure relative to other Probax personnel. Each transferred repository is therefore an Invention that is the sole and exclusive property of Probax. Ex. 1, § 8.

31. Allan also posted a message in the Probax Workspace, within a project labeled "Untitled project," asserting that the code is "developed and owned by Kevin Allan" and "provided to Probax under a revocable license that can be withdrawn at the owner's sole discretion." Copies of screenshots of that message are attached hereto as Exhibit 5. Allan's license theory fails. Under the Agreement, ownership of the Source Code vested in Probax by operation of the Agreement, so Allan held no rights that he could license to Probax. Ex. 1, § 8. A notice that Allan unilaterally posted on the repositories cannot create a license agreement that Probax never negotiated or accepted. And even on Allan's own theory, the purported revocation of a license after his termination and in the midst of Probax's pending transaction would not entitle him to resort to self-help by removing Probax's production code.

32. Allan has also withheld current versions of the Source Code that he never uploaded to the Probax Workspace and instead kept Source Code on his local systems, including the current version of Probax's "Scout" code, which is among the most important and valuable components of Probax's platform. Probax's review of its remaining repositories confirms that Scout is not in Probax's

Bitbucket. A copy of that repository status summary is attached hereto as Exhibit 6. Probax cannot complete its pending transaction without that code. Probax is actively engaged with at least two parties interested in acquiring the company, one of which has submitted a letter of intent. As part of that process, a prospective counterparty is conducting a review of Probax's code, which is at a critical stage, and Probax has made available all copies of the code in its possession. The current Scout code is the centerpiece of the prospective counterparties' interest, yet Probax cannot provide it because Allan is withholding it, placing the transaction and Probax's value as a going concern in jeopardy.

33. On October 8, 2026, Probax, through counsel, asked Atlassian, which operates Bitbucket, to preserve the transferred repositories and their commit histories, access logs, and audit logs, and to restore the repositories to Probax's control. A copy of that letter, as transmitted by counsel to Probax's Chief Executive Officer for submission to Atlassian, is attached hereto as Exhibit 7. The letter also listed three additional repositories (biltong-server, cloudprograms, and cloudside-commonfiles-v1), which Probax has since confirmed remain in the Probax Workspace. Ex. 6. Because the repositories now sit in a workspace Allan controls, Probax cannot restore them on its own. Atlassian has since closed Probax's support tickets and referred Probax to its policy for responding to legal process, and NameCheap has advised that it requires a court order before it will restore Probax's control of its account.

34. Allan has also attempted to retain control of Probax's corporate Amazon Web Services ("AWS") account, which hosts Probax's servers. On October 6, 2026, Allan submitted a support request to AWS stating that he is "the founder of Probax" and "hold[s] this account's root credentials and MFA device." Allan asked AWS to note on the account that "any change to the root email, password, MFA or account ownership requires voice verification with me first," and directed AWS

to contact him only at his personal email address and phone number. A copy of AWS's confirmation of Allan's request is attached hereto as Exhibit 8.

35. On September 30, 2026, two days after his termination, Allan sent Probax's Chief Executive Officer, Timothy Smith, a written notice. A copy of the email chain containing that notice, together with counsel's October 2, 2026 response and Allan's October 9, 2026 reply, is attached hereto as Exhibit 9. In that notice, Allan conceded that "[a]ll repositories in the Company's Bitbucket workspace located at https://bitbucket.org/probaxdevteam . . . belong to the Company." Ex. 9, § 4. Although Allan referred only to bitbucket.org/probaxdevteam, a small, free workspace that Allan created in 2020, both that workspace and the premium workspace at bitbucket.org/probax are Company workspaces that together make up the Probax Workspace, and the eight repositories he later transferred were held in the bitbucket.org/probax workspace until October 6, 2026.

36. Allan's notice also confirms that he knows the Source Code holds sensitive information. Allan acknowledged that "[t]he Company's source code contains embedded credentials" and that disclosing it without rotating those credentials "risks exposing Company systems and customer data." Ex. 9, § 3. By moving the Source Code to a workspace that he alone controls, Allan has created precisely that risk.

37. Allan also demanded a "standstill" on any provision of source code, infrastructure, credentials, or technical documentation to any third party in connection with Probax's pending sale process. Ex. 9, §§ 5, 11. Allan has therefore taken the very platform on which Probax's pending transaction depends and now seeks to dictate whether Probax may use its own property.

38. On October 2, 2026, Probax's counsel responded to Allan's notice, explained that the Source Code and related materials belong to Probax and must be returned, and made clear that Allan, as a former employee, no longer holds administrative control over Probax's systems. Allan did not

offer to return the Source Code or acknowledge that his administrative authority had ended. Instead, Allan tried to use Probax's own property as a bargaining chip, offering to negotiate over its return only if Probax granted him even broader administrative access to Probax's systems. Allan's response confirms that he is not holding the Source Code under any good-faith claim of right; he is holding it as leverage to regain and expand control over the very systems from which Probax lawfully removed him.

39. Allan has not returned the Source Code, has not delivered the Company-owned Source Code that he keeps outside the Probax Workspace, and has not restored the repositories to the Probax Workspace. On October 9, 2026, Allan sent Probax's counsel another email. A copy of that email is attached hereto as Exhibit 10. In that email, Allan again conditioned any handover of Probax's systems on Probax first giving him more access. He demanded that Probax restore his access to his former Company mailbox, which serves as the recovery and verification address for Probax's accounts, or forward him the verification messages needed to sign in to, change administrators on, or transfer ownership of those accounts. *Id.* at ¶¶ 1, 4(a). He further demanded that Probax disclose who has made any password, multi-factor authentication, or administrator change to its own systems since his termination, and that Probax agree not to change, remove, or reset any account or setting on its own systems until he agrees in writing to a handover. *Id.* at ¶ 4(b)–(c). Allan also admitted that, after his access was removed, he attempted to sign in to Probax's systems and requested a password reset on at least one account. *Id.* at ¶ 2. Although Allan characterized these demands as "not a refusal," *id.* at ¶ 7, Probax owes Allan no access to its systems, and the handover that Probax directed on September 28, 2026 requires nothing more than for Allan to surrender the credentials, administrator rights, and Source Code he continues to withhold. In the same email, Allan again claimed that repositories in his "personal" Bitbucket workspace "are mine, not the Company's," while asserting

that those repositories "carry a notice that they are licensed to the Company." *Id.* at ¶ 6. Allan further asserted that, on October 8, 2026, he removed the administrator access that Probax's John Eikenberry held to that workspace, and Allan declared that he "will not allow code I own to be used without my authorisation." *Id.*

## IV. CAUSES OF ACTION

### Count I

### Breach of Contract

40. Probax realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

41. The Agreement is a valid and enforceable contract.

42. Probax performed under the Agreement by providing employment, compensation, and continued access to its Confidential Information and systems to Allan.

43. Allan breached and continues to breach the Agreement by, among other things, using Probax's Confidential Information for purposes other than the proper course of his duties, failing to maintain the Confidential Information in strictest confidence, asserting ownership over and withholding Inventions that belong solely and exclusively to Probax, and failing to deliver to Probax the Source Code that he keeps outside the Probax Workspace. Ex. 1, §§ 7, 8.

44. As a direct and proximate result of Allan's breach of contract, Probax has suffered, and will continue to suffer, damages in an amount that Probax cannot determine with certainty at this time.

### Count II

### Misappropriation of Trade Secrets Under the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq.

45. Probax realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

46. This is an action for damages and injunctive relief against Allan for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.

47. Allan served as Probax's Chief Technology Officer and had access to and knowledge of Probax's trade secrets and Confidential Information, including the Source Code. After Probax terminated his employment, Allan acquired the Source Code by improper means, including by breaching his duty to maintain its secrecy and limit its use, and by using administrative credentials that Probax had authorized him to use only for Probax's benefit. Allan has used Probax's trade secrets without the express or implied consent of Probax, to the detriment of Probax, and for Allan's own advantage in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.

48. Allan had access to the trade secrets during his employment with Probax and knows that his acquisition, retention, use, and disclosure of those trade secrets violates his duty to maintain their secrecy and limit their use.

49. Probax stands to lose the following as a result of such misappropriation: (1) the value of the Source Code and the confidential information that Probax has expended extensive time, effort, and money to create, design, and acquire; (2) the security of its systems and customer data; and (3) the value of its pending transaction. The Source Code is essential to Probax's operations and to its value as a going concern.

50. Allan's misappropriation is willful and malicious, entitling Probax to exemplary damages under 18 U.S.C. § 1836(b)(3)(C) and attorney's fees under 18 U.S.C. § 1836(b)(3)(D).

**Count III**

**<u>Misappropriation of Trade Secrets Under New York Common Law</u>**

51. Probax realleges and reincorporates by reference the allegations contained in the preceding Complaint as if fully set forth herein.

52. This is an action for damages and injunctive relief against Allan for misappropriation of trade secrets under New York common law.

53. Allan served as Probax's Chief Technology Officer and had access to and knowledge of Probax's trade secrets and Confidential Information, including the Source Code. After Probax terminated his employment, Allan used Probax's trade secrets in breach of the Agreement and of his confidential relationship with and duties to Probax, and by improper means, including by using administrative credentials that Probax had authorized him to use only for Probax's benefit to transfer the Source Code to the Allan Workspace. Allan has used Probax's trade secrets without the consent of Probax, to the detriment of Probax, and for Allan's own advantage.

54. Allan had access to the trade secrets during his employment with Probax and knows that his retention, use, and disclosure of those trade secrets violates the Agreement and his continuing duty to maintain their secrecy and limit their use.

55. Probax stands to lose the following as a result of such misappropriation: (1) the value of the Source Code and the confidential information that Probax has expended extensive time, effort, and money to create, design, and acquire; (2) the security of its systems and customer data; and (3) the value of its pending transaction. As a direct and proximate result of Allan's misappropriation, Probax has suffered, and will continue to suffer, damages in an amount that Probax cannot determine with certainty at this time.

**Count IV**

**Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030**

56. Probax realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

57. Probax's Bitbucket, JIRA, AWS, OVH US, Fortiweb, Heimdall, Wasabi, Slack, NameCheap, and related systems are protected computers and computer systems used in or affecting interstate or foreign commerce.

58. After Probax terminated Allan's employment, Probax instructed him to preserve Probax systems and transition administrative access. Instead, Allan intentionally accessed and attempted to access—without authorization—Probax's protected computers and systems by moving repositories, altering workspace settings, removing administrator access, attempting to access systems, requesting password resets, and attempting to restrict changes to Probax's AWS account.

59. Through that conduct, Allan obtained information from Probax's protected computers, impaired Probax's access to its Source Code and systems, and caused Probax to investigate, assess, respond to, and remediate his unauthorized conduct.

60. Probax has suffered loss within the meaning of the Computer Fraud and Abuse Act, including the costs of responding to Allan's conduct, conducting damage assessments, restoring and securing systems and information, and other consequential losses, in an amount exceeding $5,000 during a one-year period.

61. Probax is entitled to compensatory damages and injunctive and other equitable relief under 18 U.S.C. § 1030(g).

**Count V**

**Breach of Contract; Misappropriation of Trade Secrets Under the Defend Trade Secrets Act 18 U.S.C. § 1836, et seq.; Misappropriation of Trade Secrets Under the New York Common Law; Violation of the Computer Fraud and Abuse Act 18 U.S.C. § 1030; (Injunctive Relief)**

62. Probax realleges and incorporates by reference the allegations contained in the preceding paragraphs of the Complaint as if fully set forth herein.

63. A real and immediate threat exists that Allan will, directly or indirectly through others, use, disclose, transfer, alter, or destroy Probax's Source Code and Confidential Information, all for the use and benefit of Allan and to the detriment of Probax.

64. Allan had access to Probax's trade secrets and access to Probax's protected computers and systems through his employment with Probax and knows that his retention, use, disclosure, and post-termination access or attempted access violates his duties to maintain the secrecy of Probax's information, limit his use of Probax's systems to authorized purposes, and return administrative control to Probax.

65. Allan's actions constitute actual misappropriation, breach of contractual confidentiality and ownership obligations, and unauthorized access or attempted access to Probax's protected computers and systems, and the threat of further misappropriation, unauthorized access, impairment, disclosure, alteration, or destruction persists.

66. If the Court does not enjoin Allan as requested herein, Probax stands to lose: (1) the value of the Source Code and Confidential Information that Probax has expended extensive time, effort, and money to create, design, and acquire; (2) the security, integrity, and availability of its systems, credentials, and customer data; (3) its ability to operate, restore, secure, and administer its own protected computers, repositories, and platform; and (4) the pending transaction and other valuable business opportunities that depend on Probax's exclusive control of the Source Code and its systems.

67. Unless the Court enjoins Allan and all others through or with whom he acts, Probax will suffer irreparable injury and harm for which it lacks an adequate remedy at law.

68. The threat of disclosure of Probax's trade secrets and Confidential Information, the threat to the security, integrity, and availability of Probax's protected computers, systems, credentials, and customer data, the threat to Probax's pending transaction, and the attendant loss of goodwill outweigh any harm an injunction may cause Allan. An injunction merely requires Allan to honor obligations he already owes, stop accessing systems he is not authorized to access, and stop using property he does not own.

69. Likewise, the Agreement is a valid and enforceable contract that Probax performed under by providing employment, compensation, and continued access to its Confidential Information and systems to Allan.

70. Allan has violated and will violate the Agreement, the Defend Trade Secrets Act, Misappropriation of Trade Secrets Under the New York Common Law, and the Computer Fraud and Abuse Act as set forth herein.

71. Probax has a substantial likelihood of success on the merits of its claims against Allan.

72. The total damages that Allan's activities cause are not readily quantifiable or measurable, and will likely be unrecoverable, leaving Probax with no adequate legal remedy. Probax, therefore, requests that the Court issue a temporary restraining order, a preliminary injunction, and, after final adjudication on the merits, a permanent injunction.

**Count VI**

**Declaratory Judgment Act**

73. Probax realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

74. Probax seeks a Declaratory Judgment under 28 U.S.C. § 2201 declaring a finding of no retaliation regarding the termination of Defendant.

75. In communications with Counsel, Allan asserted that his rights under New York Labor Law Sections 215 and 740 and 20 C.F.R. § 655.801.

76. As asserted above, Probax ended Allan's employment for financial reasons—which was established in *Probax USA, Inc. v. ThinkOn Inc. et al.*, Court File No. CV-25-00756298-0000, in the Ontario Superior Court of Justice.

77. Accordingly, there is a real dispute about the nature of Probax's termination of Allan that can be resolved by the Court conclusively finding that Probax was motivated to terminate Allan because of its financial situation, neither complaints nor his immigration status motivated the decision.

## V. INJUNCTIVE RELIEF

**Application for Temporary Restraining Order and Preliminary and Permanent Injunctions**

78. Probax realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

79. Probax seeks a temporary restraining order and preliminary injunctive relief under Federal Rule of Civil Procedure 65, the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(A), Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Probax is likely to succeed on the merits of its claims and, at a minimum, raises sufficiently serious questions going to the merits to make them a fair ground for litigation, with the balance of hardships tipping decidedly in Probax's favor. Probax is likely to suffer immediate and irreparable harm to its business if the Court allows Allan to continue to possess, use, and potentially disclose or destroy Probax's Source Code and Confidential Information, because a trade secret, once lost, is lost forever. The requested relief will require Allan only to honor obligations he already owes and to return property he does not own. The requested

relief will also serve the public interest because the law protects companies that develop trade secrets and proprietary software through the expenditure of substantial time and resources, and the law does not permit employees to profit from breaches of their agreements and misappropriation of trade secrets.

80. The total damages that Allan's activities cause are not readily quantifiable or measurable, and will likely be unrecoverable, leaving Probax with no adequate legal remedy. Probax, therefore, requests that the Court issue a temporary restraining order and, after notice and a hearing, a preliminary injunction. Probax further requests that, after final adjudication on the merits, the Court enter a permanent injunction.

81. To the extent the requested restoration of repositories, transfer of exclusive control, delivery of credentials, removal of multi-factor authentication, preservation of copies, or other affirmative relief is characterized as mandatory relief, Probax has made a clear showing that it is entitled to that relief and that extreme or very serious damage will result absent such relief.

82. Probax requests that the Court issue a temporary restraining order, grant a preliminary injunction, and, after final judgment, enter a permanent injunction restraining Allan and, as applicable, his agents, servants, employees, attorneys, and those persons in active concert or participation with him, from directly or indirectly:

a) Accessing, using, copying, downloading, disclosing, licensing, selling, or transferring any of Probax's Source Code or Confidential Information, including, but not limited to, source code, repositories, branches, commits, system architecture, infrastructure configurations, credentials, passwords, authentication information, technical documentation, data, and customer information;

b) Accessing or attempting to access any Probax computer system, account, or service, including, but not limited to, JIRA, Bitbucket, AWS, OVH US, Fortiweb, Heimdall, Wasabi, Slack, and NameCheap;

c) Transferring, moving, forking, mirroring, or granting any third party access to any repository or other material containing Probax's Source Code, including any repository in the Allan Workspace;

d) Contacting Amazon Web Services, Atlassian, or any other vendor or service provider of Probax to assert ownership or control over, or to restrict, condition, or alter Probax's access to, any Probax account, system, repository, or Source Code;

e) Destroying, concealing, or disposing of any documents, paper, or electronic files, or other materials obtained from or belonging to Probax, or containing Probax's Source Code, Confidential Information, or trade secrets; and

f) Altering, deleting, removing, or writing over in any respect any documents, computer files (including, but not limited to, e-mails, repositories, commit histories, access logs, audit logs, hard drives, cloud storage accounts, and external drives), data, drafts, text messages, or other things relating in any way to Probax, including the Source Code and any record of its transfer, until such time as those materials may be turned over in discovery or until further order of the Court.

83. To preserve the status quo that existed before Allan's wrongful conduct and prevent further loss of control over Probax's property, Probax further requests that the Court order Allan, within forty-eight (48) hours of service of the order, to:

a) remove any limitation to Probax's access, restore to the Probax Workspace, or otherwise transfer to Probax's exclusive control, every repository containing Probax's Source Code that Allan moved, copied, or transferred to the Allan Workspace or any other location, including but not limited to the eight transferred code repositories: api, dropbox, dropboxv2, internal-api, metabase-tools, scout, vcspchecker, and vcspchecker-www, each with its complete commit history, branches, and tags, and all other code needed to reproduce current production versions of the Probax platform, wherever held;

b) deliver to Probax all source code required to reproduce the current production version of Scout (as of September 28, 2026), whether held within the scout repository or elsewhere;

c) deliver to Probax all other source code required to reproduce the current production version of the Probax platform (as of September 28, 2026), whether held outside of Probax repositories or otherwise in Allan's possession or control;

d) deliver to Probax's counsel all materials, credentials, and access rights necessary to restore Probax's exclusive control over its repositories, systems, and administrator accounts, and take all steps necessary to restore that exclusive control, including transferring ownership of the Allan Workspace repositories to Probax, restoring

Probax's designated administrators, and removing every account, IP restriction, and administrator setting he added after September 28, 2026;

e) deliver to Probax's counsel all passwords, credentials, and authentication information necessary for Probax to access and administer its systems, including removing any and all Multi Factor Authentication on all accounts over which Probax has not regained control; and

f) refrain from deleting any copy of the Source Code in his possession, custody, or control pending forensic verification under a protocol agreed by the parties or ordered by the Court, and file with the Court a sworn certification identifying each repository, code set, credential, and access right delivered or restored, and confirming that the code delivered under subsections (b) and (c) is complete and sufficient to build and run the production versions of Scout and the Probax platform as they existed on September 28, 2026.

84. Probax will post security under Federal Rule of Civil Procedure 65(c) in the amount the Court deems proper.

## VI. RELIEF REQUESTED AS TO ALL COUNTS

WHEREFORE, PREMISES CONSIDERED, Probax prays that this Court enter judgment for Probax and against Allan as follows:

(a) permanently enjoin Allan and, as applicable, his agents, servants, employees, attorneys, and those persons in active concert or participation with him, from directly or indirectly engaging in the conduct described above;

(b) issue a temporary restraining order and a preliminary injunction enjoining and restraining Allan as described above until a final hearing and decision on the merits of Probax's claims for a permanent injunction;

(c) order Allan to return all property of Probax, including the Source Code and each item described in Paragraph 83, to take all steps necessary to restore Probax's exclusive control over its repositories and systems, and to certify his compliance under oath;

(d) order Allan to submit his devices and accounts to a forensic inspection protocol to verify the return and, upon verification, the permanent deletion of Probax's Source Code and Confidential Information;

(e) order Allan to account under oath for every copy, transfer, use, and disclosure of Probax's Source Code and Confidential Information;

(f) award Probax compensatory damages against Allan, including actual damages, according to proof at trial, for all damages Probax has suffered as a result of Allan's unlawful acts as set forth above;

(g) award Probax exemplary damages, punitive damages, and costs to the fullest extent permitted by the Defend Trade Secrets Act and the Computer Fraud and Abuse Act, and applicable law;

(h) issue a declaration that Probax did not violate Allan's rights
(i) award Probax the costs of this action, including reasonable attorneys' fees; and
(j) award Probax such other and further relief as this Court deems just and proper.

Dated: October 14, 2026

Respectfully submitted,

WINSTON TAYLOR LLP

By: */s/ Jeffrey J. Amato*

Jeffrey J. Amato
Jeffrey.amato@winstontaylor.com
200 Park Avenue
New York, New York 10166
Tel.: (212) 294-6700
Fax: (212) 294-4700

John C.C. Sanders, Jr. (pro hac vice pending)
Texas Bar No. 24057036
John.sanders@winstontaylor.com
Sophie Walker (pro hac vice pending)
Texas Bar No. 24143499
Sophie.walker@winstontaylor.com
2121 N. Pearl Street
Suite 900
Dallas, Texas 75201
Tel.: 214-453-6500

*Counsel for Plaintiffs Probax USA, Inc. and Probax PTY LTD*

**VERIFICATION**

I, Timothy F. Smith, declare as follows:

1. I am over the age of 21 and fully competent to make this declaration. My date of birth is 12/25/66, and my address is 46 Dover Road, Wellesley, Massachusetts 02482.

2. I have personal knowledge of the facts and statements contained in this verification and I declare under penalty of perjury that the following is true and correct.

3. I am the Chief Executive Officer of Probax USA Inc. ("Probax"), and a duly authorized agent of Probax in this action.

4. The factual allegations set forth in paragraphs 1–4, 9–12, 13 (as to employee confidentiality obligations), 15–22, 25–27, 31 (as to the Agreement with Allan), 32 (as to prospective buyers and the letter of intent), 33, 35, 37–39, 42, 49, 55, 60, 69, and 74–77 of the foregoing Plaintiffs' Original Verified Complaint and Application for Temporary Restraining Order and Preliminary and Permanent Injunctions are within my personal knowledge by various means, and are true and correct to the best of my knowledge, information and belief.

Executed in Norfolk County, State of Massachusetts on the 14th day of October, 2026.

Timothy Smith

Timothy F. Smith

# VERIFICATION

I, John Eikenberry, declare as follows:

1. I am over the age of 21 and fully competent to make this declaration. My date of birth is 11 June 1965, and my address is 4 Stowte Close, Longwell Green, Bristol, BS30 9EB, UK.

2. I have personal knowledge of the facts and statements contained in this verification and I declare under penalty of perjury that the following is true and correct.

3. I am the SVP of European Operations of Probax USA Inc. ("Probax"), and a duly authorized agent of Probax in this action.

4. The factual allegations set forth in paragraphs 13 (except as to employee confidentiality obligations), 14 (except as to the characterization of the Source Code and information as trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1839(3), and New York common law), 23–24, 28–30, 31 (except as to the Agreement with Allan), 32 (except as to prospective buyers and the letter of intent), 34, 36, 47, 53, and 57–59 of the foregoing Plaintiffs' Original Verified Complaint and Application for Temporary Restraining Order and Preliminary and Permanent Injunctions are within my personal knowledge by various means, and are true and correct to the best of my knowledge, information and belief.

Executed in South Gloucestershire County, State of ______ on the ______ day of October, 2026.

John Eikenberry

John Eikenberry