UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PROBAX USA, INC. AND PROBAX PTY LTD, Plaintiffs, -against- KEVIN ALLAN, Defendant. | | 26-CV-9052 (VSB) **OPINION & ORDER** |

Appearances:

Jeffrey J. Amato
Winston Taylor LLP
New York, NY

John C.C. Sanders, Jr.
Sophie Sian Walker
Winston Taylor LLP
Dallas, TX
*Counsel for Plaintiffs Probax USA, Inc. and Probax PTY LTD*

Kevin Allan
New York, NY
*Pro Se Defendant*

VERNON S. BRODERICK, United States District Judge:

Before me is Plaintiffs' request to expand the scope of the temporary restraining order currently in effect such that Plaintiffs gain control of the source code and related systems at issue in this action. For the reasons that follow, Plaintiffs' request is GRANTED IN PART.

## I. **Factual Background**[1]

Probax USA, Inc. ("Probax"), a wholly owned subsidiary of Probax PTY LTD ("Probax Australia," and together with Probax, "Plaintiffs"), is a technology company that develops and operates a proprietary cloud-based software platform. (Doc. 1 ("Complaint" or "Compl.") ¶¶ 9, 15.) Probax's source code, repositories, architecture, credentials, and technical documentation make up the "core assets of the company." (*Id.* ¶ 9)

Kevin Allan ("Allan" or "Defendant") is the Founder of Probax Australia. (*Id.* ¶ 15.) In 2017, his role was "formalized into an employment agreement with Probax," pursuant to which he served as Probax's Chief Technology Officer. (*Id.*) Allan formerly served as a director of Probax Australia—a position from which he resigned by letter dated October 14, 2025—but he never served as a director of Probax. (*Id.* ¶ 16.) On September 28, 2026, Probax terminated Allan's employment without warning, effective the same day. (*Id.* ¶ 25; Doc. 25 ¶ 25.) According to Plaintiffs, Allan's employment was terminated "because of Probax's financial circumstances and lack of sufficient capital to maintain payroll for Allan's position." (Compl. ¶ 15.)

Plaintiffs allege that, following the termination of his employment, Allan "removed Probax's code from the Probax Workspace" and "failed to deliver to Probax the Company-owned code he keeps in his own personal storage, which is equally Probax's property," in violation of his employment contract, the Defend Trade Secrets Act, New York common law governing trade secrets, and the Computer Fraud and Abuse Act. (*Id.* at 2.) As a result, Plaintiffs allege that Allan "now controls the core asset of the company, and a pending transaction that depends on that platform hangs in the balance." (*Id.*) Specifically, Plaintiffs represent that "Probax is actively

[1] The facts set forth here, drawn from Plaintiffs' Complaint, are included to the extent necessary for this Opinion & Order and are undisputed unless attributed only to Plaintiffs. My citation of these facts should not be construed as a finding as to their veracity.

engaged with at least two parties interested in acquiring the company, one of which has submitted a letter of intent." (*Id.* ¶ 32.) "As part of that process, a prospective counterparty is conducting a review of Probax's code," but Probax has not been able to make its source code available for review "because Allan is withholding it." (*Id.*)

**II. <u>Procedural History</u>**

On October 14, 2026, Plaintiffs initiated this action against Allan, alleging breach of contract, misappropriation of trade secrets, and violation of the Computer Fraud and Abuse Act. (Compl.) Plaintiffs filed an Original Verified Complaint and Application for Temporary Restraining Order and Preliminary and Permanent Injunctions, (*Id.*), two Proposed Orders to Show Cause (Docs. 7 and 10), a Proposed Temporary Restraining Order and Memorandum of Law in Support (Docs. 8 and 9), a Motion for Expedited Discovery (Doc. 11), and a supporting declaration by counsel Jeffrey J. Amato (Doc. 12). The next day, I set an initial telephonic hearing for October 23, 2026, and granted temporary injunctive relief to preserve the status quo pending such hearing. (Doc. 14.)

During the initial hearing, I extended, with Defendant's consent, the temporary restraining order issued on October 15, 2026, (Doc. 14), pending resolution of Plaintiffs' request for a preliminary injunction. (*See* Doc. 21 at 1.) *See also* Fed. R. Civ. P. 65(b)(2) (authorizing court to extend TRO beyond fourteen days with adverse party's consent). I reserved ruling on the issue of posting security pursuant to Federal Rule of Civil Procedure 65(c), directed Defendant to file a proposed bond amount, and permitted Plaintiffs to respond. (*Id.*) I also reserved ruling on Plaintiffs' request to expand the scope of the temporary restraining order, consistent with the proposed order Plaintiffs filed, (Doc. 9), pending further submissions by the parties. (*See* Doc. 21 at 1.) Finally, I directed the parties to meet and confer regarding the identification and segregation

of correspondence between Allan and his personal attorneys that remains in Plaintiffs' possession. (*Id.* at 2.)

As directed, the parties have since made supplemental submissions in support of, (Docs. 24–26, 34, 38), and in opposition to, (Docs. 39–41), Plaintiffs' request to expand the scope of the temporary restraining order. Those submissions also address the parties' requests concerning limited discovery in advance of briefing on Plaintiffs' request for a preliminary injunction. (Docs. 38 at 7–8, 40 at 12–14, 41 ¶¶ 12–13.) Separately, the parties have submitted proposals for a bond amount pursuant to Rule 65(c). (Docs. 30, 31.)

Plaintiffs' supplemental letter, dated October 29, 2026, indicates that (1) Allan's proposed order, (Doc. 41), "offers much of the operational relief Probax needs," and (2) Plaintiffs are "prepared to accept" that proposal, subject to a handful of requested changes reflected in a new proposed order, (Doc. 36). (Doc. 38 at 1.) Accordingly, in part because Plaintiffs had apparently proposed certain new terms without conferring with Defendant, I ordered the parties to meet and confer in an effort to resolve any remaining disputes regarding the appropriate terms to govern the parties pending resolution of Plaintiffs' request for a preliminary injunction. (Doc. 43.) The parties met and conferred, but failed to file a joint submission regarding mutually agreeable terms as directed. (*See* Doc. 44.) Instead, in an effort to comply with my Order absent timely sign-off from Allan, Plaintiffs submitted a letter, dated November 3, 2026, outlining their own understanding of the areas of agreement between the parties, as well as their correspondence with Allan regarding the draft joint submission. (*Id.*)

On November 5, 2026, three days after the deadline for the parties' joint submission, Allan requested leave to submit yet another proposed order. (Doc. 45.) On November 6, 2026, Plaintiffs opposed that request and moved for leave to file additional evidence of irreparable harm. (Docs.

47, 47-1.) Today, Allan filed a letter in response to Plaintiffs' proposed submission regarding irreparable harm. (Doc. 54.) In light of the emergency posture and the showing of irreparable harm, I will decide Plaintiffs' request to expand the scope of the temporary restraining order on the present record. Therefore, the requests of the parties to file additional submissions to the record are DENIED. Both parties will have the opportunity to make additional evidentiary submissions at the preliminary injunction stage.

## III. Legal Standard

The standard for determining whether to grant a motion for a temporary restraining order is the same as used in evaluating a motion for a preliminary injunction. *Local 1814, Int'l. Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985) (describing a preliminary injunction as "one of the most drastic tools in the arsenal of judicial remedies"). To obtain relief in the Second Circuit, the party seeking a preliminary injunction "must ordinarily establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (internal quotation marks omitted). "A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks omitted).

## IV. Discussion

Given the significant areas of agreement reflected in the parties' supplemental submissions, the questions before me at this time are narrow. Indeed, much of the temporary injunctive relief that Plaintiffs initially sought on October 14, 2026, (Doc. 9), is already in place pursuant to my Order dated October 15, 2026, (Doc. 14). As noted above, Allan has consented to the extension of that relief pending resolution of Plaintiffs' request for a preliminary injunction. (*See* Docs. 21 at 1, 40 at 1.) Moreover, the parties have reached agreement as to a range of additional terms to govern interim access to the disputed property, preservation obligations, and discovery. Allan initially proposed an order to that effect, (Doc. 41), and Plaintiffs confirmed that Allan's proposed order "offers much of the operational relief Probax needs," (Doc. 38 at 1.) Plaintiffs have also indicated they are "prepared to accept" Allan's proposal, subject to a handful of requested changes. (*Id.*) Accordingly, I construe the terms on which the parties agree as, in the aggregate, a joint stipulation, which I adopt by separate Order, and confine my analysis here to evaluating whether Plaintiffs have made a sufficient showing in support of the proposed injunctive relief terms that go beyond Allan's proposed order. (*See* Doc. 38 at 4–5.)

The central dispute between the parties at this stage concerns who will control the source code and repositories at issue in this action pending resolution of Plaintiffs' application for a preliminary injunction. The temporary restraining order entered on October 15, 2026, which continues to enjoin Allan from use, access, transfer, vendor contact, destruction, and alteration, did not require Allan to restore the repositories to the Probax workspaces, deliver any withheld code, or turn over his credentials and administrative control. (*See generally* Doc. 14.) Plaintiffs now seek an expanded temporary restraining order that includes such relief. Allan, for his part, consents to a "[s]upervised handover of company systems," (Doc. 41 ¶ 7), and to providing "read

and clone access to the Repositories, with full history," (*id.* at ¶ 4), but opposes "a transfer of exclusive control," (Doc. 40 at 8).

### A. *Likelihood of Success*

As an initial matter, Allan's submissions to date do not challenge the merits of Plaintiffs' claims—namely, breach of contract, misappropriation of trade secrets, and violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Despite being afforded an opportunity to respond, Allan does not meaningfully dispute that (1) there was a valid, enforceable contract governing his employment as Probax's Chief Technology Officer, (Doc. 1-1); (2) Probax performed its obligations under the contract (Compl. ¶ 22); or (3) Allan breached the contract when, after the termination of his employment, he transferred repositories containing confidential information out of a Probax workspace and into a personal workspace and also withheld current versions of source code developed in connection with his role as Probax Chief Technology Officer but kept on his local system. Moreover, the record indicates that Allan's conduct has caused damage to Probax. (*See e.g.*, *id.* ¶¶ 59–60; Doc. 24 ¶ 24.) Accordingly, based on the current record, I conclude that Plaintiffs are likely to succeed on the merits of their breach of contract claim.[2] *See Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).

### B. *Irreparable Harm*

Allan contends that "Plaintiffs have not shown irreparable harm that only turnover can cure" because "Plaintiffs' operational concern[s]," such as "maintaining the platform, fixing defects, [and] supporting customers," are addressed by the limited access he consents to provide. (Doc. 40 at 7–8.) However, Plaintiffs counter, with supportive declarations signed by corporate

---

[2] The moving party need only show likelihood of "success on the merits of at least one claim to justify preliminary injunctive relief." *New York Pathological & X-Ray Labs., Inc. v. Immigr. & Naturalization Serv.*, 523 F.2d 79, 82 (2d Cir. 1975). Because Plaintiffs have shown likelihood of success on their breach of contract claim, I do not reach the other claims at this juncture.

executives under penalty of perjury, that a copy or read-only version of the source code is insufficient to meet the operational needs of the business, because "[s]ource code is not stagnant but requires dynamic functionality." (Doc. 34 at 2.) Probax represents that, with only the limited access Allan offers, it would have "no ability to monitor customer backups accurately, investigate problems, maintain its software, and respond to changes in third-party services." (*Id.* (citing Doc. 24 ("Eikenberry Decl.") ¶ 18.)) In other words, Plaintiffs explain that "[t]he source code may be able to continue on autopilot, but the company has no ability to address problems in real time, which may be major or minor and could occur at any moment." (*Id.*) Indeed, "Probax already has faced a backlog of issues that it is unable to address, and it lacks any ability to investigate or address those or any issues that may arise." (*Id.* (citing Eikenberry Decl. ¶ 24.)) Moreover, "[i]nability to update the code impairs Probax's ability to maintain compatibility with partner platforms." (*Id.* (citing Eikenberry Decl. ¶ 18.)) Finally, Plaintiffs contend that Probax has "two active potential acquirers" but has been and is unable to provide either with "the complete, verifiable technical materials" required for "due diligence." (*Id.* at 2–3.)

Courts in this District have recognized that software-related operational disruptions, particularly those affecting the services provided to customers, can constitute irreparable harm. *See, e.g.*, *Spark Techs., Inc. v. Emsixteen Consulting, Inc.*, No. 25-CV-1389, 2025 WL 4947222, at *1 (S.D.N.Y. Feb. 21, 2025) (finding irreparable harm where "Defendants removed the Source Code from [plaintiff's] systems and prevented [plaintiff] from further accessing the Code, causing [plaintiff's] systems to experience a complete outage"); *C.D.S., Inc. v. Zetler*, 190 F. Supp. 3d 375, 376 (S.D.N.Y. 2016) (finding irreparable harm where plaintiff "could not fix or make improvements to the software that would remedy the bugs or add the requested improvements because it lacked the necessary administrator credentials"); *Broadbridge Media, LLC v.*

*Hypercd.com*, 106 F. Supp. 2d. 505, 509–10 (S.D.N.Y. 2000) (finding sufficient showing of irreparable harm where the loss of a domain name and email address resulted in plaintiff being "unable to provide the contractually required technical support" to its clients). Here, too, I find that Plaintiffs have made a sufficient showing that they will suffer irreparable harm absent the requested relief.

### C. *Public Interest*

Finally, I find that the requested temporary restraining order is in the public interest. Without access to and control of its source code and related systems, Probax is unable to fully service its customers by ensuring continued compatibility with partner platforms and accuracy of customer-backup information. (Eikenberry Decl. ¶¶ 16–24.)

Additionally, the concerns Allan raises regarding disputed title[3] and disclosure of the source code to potential buyers are addressed by specific terms the parties have proposed, including language expressly stating that the Order does not "decid[e] the ownership of any software, repository, or intellectual property," the requirement that Probax disclose the repositories and source code only under specified circumstances involving confidentiality obligations or a protective order, and the requirement that Probax not close any transaction or sale, or transfer the repositories or code, before I rule on Plaintiffs' application for a preliminary injunction.

* * *

For these reasons, I will expand the scope of the temporary restraining order. However, I

[3] To be clear, Allan's submissions to date do not assert a claim to personal ownership of the source code at issue in this action. Rather, he argues that "[w]ho owns which code, written when and under which entity, is genuinely disputed" because "Plaintiffs' CEO now swears that Probax Pty Ltd owns the intellectual property, and that Probax USA only licenses it." (Doc. 40 at 1.) He further notes that he is "the majority shareholder of the company that, by Plaintiffs' own account, owns the intellectual property." (*Id.* at 3.) However, both Probax USA and Probax Pty Ltd are Plaintiffs in this action, so regardless of which entity owns the code, Allan stops short of asserting personal ownership.

find that some of Plaintiffs' requested relief either is not necessary to address the showing of irreparable harm or would conflict with the temporary restraining order entered on October 15, 2026, (Doc. 14). In particular, with regard to paragraph 4 of Plaintiffs' latest proposed order, (Doc. 36), I find as follows:

- *Subparagraph a*: Such relief would likely require Allan to violate the terms of the temporary restraining order entered on October 15, 2026, (Doc. 14); instead, repositories are to be handed over as part of the supervised handover of company systems, to which Defendant has consented, (Doc. 41 ¶ 7). As stated in the accompanying Order, Allan's conduct in compliance with the supervised-handover directive shall not be deemed a violation of the temporary restraining order entered on October 15, 2026.
- *Subparagraph b*: Such relief would likely require Allan to violate the terms of the temporary restraining order entered on October 15, 2026, (Doc. 14); instead, repositories are to be handed over as part of the supervised handover of company systems, and a neutral examiner will be responsible for recovering source code that is stored locally, as Allan proposes (Doc. 41 ¶¶ 5–6). As stated in the accompanying Order, Allan's conduct in compliance with the supervised-handover directive shall not be deemed a violation of the temporary restraining order entered on October 15, 2026.
- *Subparagraph c*: Such relief would likely require Allan to violate the terms of the temporary restraining order entered on October 15, 2026, (Doc. 14); instead, repositories are to be handed over as part of the supervised handover of company systems, and a neutral examiner will be responsible for recovering source code that is stored locally, as Allan proposes (Doc. 41 ¶¶ 5–6). As stated in the accompanying Order, Allan's conduct in compliance with the supervised-handover directive shall not be deemed a violation of the

temporary restraining order entered on October 15, 2026.

- *Subparagraph d*: Such relief would likely require Allan to violate the terms of the temporary restraining order entered on October 15, 2026, (Doc. 14); instead, Probax's control of its systems and administrator accounts is to be restored through the supervised handover of company systems, to which Defendant has consented, (Doc. 41 ¶ 7). As stated in the accompanying Order, Allan's conduct in compliance with the supervised-handover directive shall not be deemed a violation of the temporary restraining order entered on October 15, 2026.
- *Subparagraph e*: Such relief is not necessary to prevent irreparable harm, as the supervised handover of company systems will include handing over credentials and MFA for specified company systems, with Allan's consent. (*See* Doc. 40 at 9). Should Plaintiffs identify additional systems through discovery for which they wish to request credentials, such a request may be raised in connection with Plaintiffs' application for a preliminary injunction.
- *Subparagraph f*: Such relief is not necessary to prevent irreparable harm, as the existing temporary restraining order already enjoins Allan from deleting source code. (Doc. 14 at 2.)

## V. Conclusion

Plaintiffs' request to expand the scope of the existing temporary restraining order is GRANTED IN PART and DENIED IN PART. The terms of the temporary injunctive relief, the associated bond amount pursuant to Rule 65(c), and the parameters of discovery in advance of briefing on Plaintiffs' request for a preliminary injunction, will be set forth in a separate, concurrently filed Order.

The Clerk of Court is respectfully directed to terminate Documents 46, 47, and 48, without prejudice to submitting such evidence in connection with Plaintiffs' request for a preliminary injunction.

SO ORDERED.

Dated: November 9, 2026
New York, New York

Vernon Broderick

Vernon S. Broderick
United States District Judge